Marlous I. KARLICH *v.*
Huey COPELIN et ux

78-310                                          280 S.W. 2d 943

Opinion delivered May 21, 1979
(In Banc)

*Bob Keeter* and *Tompkins, McKenzie, McRae & Vasser,* on the brief, for appellant.

*Ben Core,* of *Daily, West, Core, Coffman & Canfield,* for appellees.

FRANK HOLT, Justice. This is an action involving an "Agreement for Trade in Equities in Real Estate," and an escrow contract by which the appellant and the appellees swapped properties. The court dismissed appellant's complaint and appellees' counterclaim.

Appellant was the owner of a 38 acre tract of land in Polk County. She negotiated a "trade in equities" with the appellees, contracting to trade her 38 acre tract for property that appellees owned, which in part fronted on a highway just outside the Mena city limits. Appellant allegedly believed that appellees' property contained 6 acres. Sometime after

the trade agreement and escrow contracts were executed, appellant found that the property contained 3.5 acres rather than 6 acres. When appellees would not make an adjustment on the acreage deficiency, appellant brought this suit, alleging that it was of the essence that the tract contain 6 acres and that appellees knew the tract contained less and had misled her as to the acreage. She asked for reformation of the deed so that she would receive 6 acres, or, in the alternative, for damages, rescission, or other relief. Appellees denied that they had represented the tract contained 6 acres or that the acreage was of essence to the contract and counterclaimed, alleging that appellant had defaulted in her payments because she had "received" $17,000 from an escrow account in California and had failed to apply it, as she had agreed, to the indebtedness she had assumed on the acreage which she had purchased from the appellees. Appellees prayed for specific performance and payment of the entire amount due under the contract. The chancellor, after hearing the evidence, dismissed appellant's complaint, finding that appellant was not entitled to either reformation or rescission and had not sufficiently proved her damages. The chancellor also dismissed appellee's counterclaim finding that appellant had not "received" the California escrow proceeds and, therefore, was r. t obligated to pay more than the agreed $150 per month on the local indebtedness.

Appellant first contends that the court erred in not granting an abatement of the purchase price. She argues that the sale was for an exact number of acres (6) which was of the essence to the contract and that the 40% deficiency in acreage was a "gross" mistake. Therefore, as a matter of law, she is entitled to an abatement of the $24,000 purchase price in proportion to the acreage deficiency.

Even if we should agree that appellant is entitled to an abatement, we must agree with the chancellor that her proof as to her damages is insufficient. The court found that the testimony of appellant's appraisal witness was not a sufficient guide from which damages could be determined for the shortage in acreage. Even so, appellant argues that the chancellor did not correctly apply the law inasmuch as the purchase price of $24,000 for the 6 acres was sufficient for the chancellor to compute the damages on an acreage basis. In

other words, the purchase price and acreage were a sufficient basis, without further proof, to proportionately reduce or abate the purchase price. However, it appears that appellant overlooks the fact that the property included a building. The value of that improvement had to be taken into account in arriving at appellant's damages. In *Edwards v. Johnson,* 227 Ark. 345, 298 S.W. 2d 336 (1957), we said:

> More is involved than a simple computation of the proportionate damage resulting from a deficiency of nine acres. The dwelling house upon this small parcel of ground unquestionably enhanced its value. There is nothing to indicate that the parties dealt in terms of a fixed price per acre without reference to the improvements. In these circumstances the purchaser's loss is equitably determined by first deducting the value of the improvements from the purchase price and then calculating the damage attributable to the shortage of acreage.

Here there was no testimony to meet these requirements. Therefore, there was no basis for a determination by the chancellor as to the extent appellant was injured by the deficiency in acreage. Appellant urges that since this is an abatement proceeding, it should be remanded for further proceedings as to any deficiency in proof. In *Edwards v. Johnson, supra,* we said:

> It is suggested that the cause be remanded for additional proof, but the record discloses no circumstances justifying a piecemeal trial on the issues.

We think that case is controlling here.

Appellees contend on cross-appeal that the court erred in interpreting their trade contract with respect to application of the California escrow funds. The contract reads in pertinent part:

> "[A] collection of an Escrow in the State of California which is about to mature, in the approximate amount of $17,000 will be paid and credited by her [appellant]

when received upon said indebtedness against the six acre tract. . . .

The court construed the agreement to apply only if a payment of money resulted in an increased cash flow to appellant. Appellees argue that appellant "received" $12,000 from the California escrow contract since these funds were collected there and then applied to reduce her indebtedness on property in California. The persons to whom appellant sold her California property applied the escrow funds, without her consent, to first liens or mortgages on the property which appellant had sold to them. This was allowed under California law. Although they provide us with no Arkansas law on this point, appellees cite several cases from other jurisdictions purporting to stand for the proposition that, in a situation such as here, the funds are considered to be "received" by the party in appellant's position. Those cases, however, deal with the interpretation of receipt of funds for tax purposes and are not controlling here. Words used in a contract are to be given their plain and ordinary meaning. *Miller v. Dyer*, 243 Ark. 981, 423 S.W. 2d 275 (1968). To "receive" is to "take possession or delivery of." Webster's Third New International Dictionary. Appellant here never had the California funds in her possession and did not take delivery of them. We hold that the court correctly interpreted the contract. Therefore, the court's finding that she did not default in her contractual obligations is also correct.

Affirmed on direct appeal and cross-appeal.